ROBERT RUSSELL *v.* MYSTIC SEAPORT MUSEUM, INC., ET AL.
(SC 16102)

McDonald, C. J., and Borden, Palmer, Sullivan and Callahan, Js.

---

Argued December 3, 1999—officially released April 4, 2000

*Amy M. Stone*, for the appellant (plaintiff).

*Richard T. Stabnick*, with whom, on the brief, was *Joseph E. Skelley, Jr.*, for the appellees (defendants).

*Opinion*

SULLIVAN, J. The dispositive issues in this certified appeal require that we interpret General Statutes § 31-294c[1] of the Workers' Compensation Act (act). First,

[1] General Statutes § 31-294c provides in relevant part: "Notice of claim for compensation. Notice contesting liability. (a) No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury . . . . Notice of a claim for compensation may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. . . . As used in this section, 'manifestation of a symptom' means manifestation to an employee claiming compensation, or to some other person standing in such relation to him that the knowledge of the person would be imputed to him, in a manner that is or should be recognized by him as symptomatic of the occupational disease for which compensation is claimed.

"(b) Whenever liability to pay compensation is contested by the employer, he shall file with the commissioner, on or before the twenty-eighth day after he has received a written notice of claim, a notice in accord with a form prescribed by the chairman of the Workers' Compensation Commission stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested. . . . If the employer or his legal representative fails to file the notice contesting liability on or before the twenty-eighth day after he has received the written notice of claim, the employer shall commence payment of compensation for such injury or death on or before the twenty-eighth day after he has received the written notice of claim, but the employer may contest the employee's right to receive compensation on any grounds or the extent of his disability within one year from the receipt of the written notice of claim, provided the employer shall not be required to commence payment of compensation when the written notice of claim has not been properly served in accordance with section 31-321 or when the written notice of claim fails to include a warning that (1) the employer, if he has commenced

we must determine whether, under the circumstances of this case, the plaintiff, Robert Russell, filed a notice of claim for workers' compensation benefits sufficient to support a motion to preclude the named defendant,[2] Mystic Seaport Museum, Inc., from contesting liability. Specifically, we must determine whether the plaintiff supplied a date of injury in his notice of claim for a repetitive trauma injury sufficient to support a motion to preclude. Second, we must determine whether the defendant's notice contesting liability was sufficient to defeat the plaintiff's motion to preclude.[3]

payment for the alleged injury or death on or before the twenty-eighth day after receiving a written notice of claim, shall be precluded from contesting liability unless a notice contesting liability is filed within one year from the receipt of the written notice of claim, and (2) the employer shall be conclusively presumed to have accepted the compensability of the alleged injury or death unless the employer either files a notice contesting liability on or before the twenty-eighth day after receiving a written notice of claim or commences payment for the alleged injury or death on or before such twenty-eighth day. An employer shall be entitled, if he prevails, to reimbursement from the claimant of any compensation paid by the employer on and after the date the commissioner receives written notice from the employer or his legal representative, in accordance with the form prescribed by the chairman of the Workers' Compensation Commission, stating that the right to compensation is contested. Notwithstanding the provisions of this subsection, an employer who fails to contest liability for an alleged injury or death on or before the twenty-eighth day after receiving a written notice of claim and who fails to commence payment for the alleged injury or death on or before such twenty-eighth day, shall be conclusively presumed to have accepted the compensability of the alleged injury or death.

"(c) . . . No defect or inaccuracy of notice of claim shall bar maintenance of proceedings unless the employer shows that he was ignorant of the facts concerning the personal injury and was prejudiced by the defect or inaccuracy of the notice. Upon satisfactory showing of ignorance and prejudice, the employer shall receive allowance to the extent of the prejudice."

[2] ITT Hartford Insurance Group, as workers' compensation insurer of the named defendant, is the other defendant in this action. For convenience, we refer to the named defendant and its insurer, collectively, as the defendant throughout this opinion.

[3] The first of these two issues is the only certified issue relating to the plaintiff's motion to preclude. See *Russell* v. *Mystic Seaport Museum, Inc.,* 248 Conn. 918, 734 A.2d 567 (1999). The defendant, however, argues, as an alternative ground for affirming the judgment of the Appellate Court, that its notice to contest liability was sufficient to defeat the plaintiff's motion

The plaintiff appeals from the judgment of the Appellate Court affirming the decision of the compensation review board (board). The board had determined that the workers' compensation commissioner (commissioner) properly had denied the plaintiff's motion to preclude the defendant from contesting liability. We

to preclude. The plaintiff argues that we should not consider this argument for two reasons. First, the plaintiff argues that the issue was not certified for appeal. Although the plaintiff is correct that this issue was not certified for appeal, that fact is unimportant because alternative grounds for affirmance need not be certified for appeal in order for this court to consider them. See *State* v. *Schiappa*, 248 Conn. 132, 136–37, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999); see also Practice Book § 84-11 (a) ("[u]pon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court").

Second, the plaintiff argues that the defendant failed to preserve this argument for appeal by filing a statement of alternative grounds for affirmance pursuant to Practice Book § 84-11 (c), which provides in relevant part: "Any party desiring to present alternative grounds for affirmance . . . shall file a statement thereof within fourteen days from the issuance of notice of certification. . . ." Although the plaintiff is correct that the defendant failed to comply with Practice Book § 84-11 (c), we have refused to consider an issue not contained in a preliminary statement of issues only in cases in which the opposing party would be prejudiced by consideration of the issue. See *Chotkowski* v. *State*, 240 Conn. 246, 256 n.17, 690 A.2d 368 (1997).

In *Chotkowski*, we considered the preliminary statement of issues requirement embodied in what is now Practice Book § 63-4 (a) (1), which provides in relevant part: "If any appellee wishes to . . . present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of the issues.

"Whenever the failure to identify an issue in a preliminary statement of issues prejudices an opposing party, the court may refuse to consider such issue."

We have treated the preliminary statement of issues requirement relevant to appeals; Practice Book § 63-4 (a) (1); and the requirement applicable to certified appeals; Practice Book § 84-11; such as this case, similarly. See *State* v. *Hodge*, 201 Conn. 379, 382–83, 517 A.2d 621 (1986) (citing predecessors to Practice Book §§ 63-4 and 84-11). Therefore, in this case, we will consider the defendant's alternative grounds for affirmance inasmuch as the plaintiff has not argued that he was prejudiced by the defendant's failure to file a preliminary statement of issues.

conclude that the plaintiff's notice of claim was sufficient to support a motion to preclude, and that the defendant failed to file a notice contesting liability sufficient to defeat the plaintiff's motion to preclude. Accordingly, we reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The commissioner held a hearing on July 25, 1995 . . . . The plaintiff was, at all relevant times, an employee of the [named] defendant . . . . On May 2, 1991, the plaintiff was working as an engineer aboard the steamboat Sabino. On that day, the plaintiff was reassembling a valve that had been taken apart. To get a better grip on the valve assembly, he changed his position and then fell approximately four and one-half feet to the deck plating. As he fell, he hit his left elbow on a pipe, shoving his left arm behind his head and dislocating his shoulder. After he landed, the plaintiff reduced the dislocation himself.

"After the accident, the plaintiff submitted an employee incident report and continued working the rest of his shift. The plaintiff did not seek medical treatment or miss any time from work because of the injury. [The named defendant] completed an employer's first report of occupational injury or disease on May 8, 1991.

"The plaintiff's typical work day included ten to twelve hour shifts during which he was responsible for the regular maintenance of the Sabino and stoking the ship's coal burning boiler. Additionally, he spent approximately one half of his work day turning valves, including some above his head, requiring full extension of his arm.

"The plaintiff had suffered between twenty to thirty partial and full dislocations of his left shoulder between the time of the accident and October, 1994, some of

which happened while he was working. The plaintiff first notified his supervisor, Dick Lotz, and the director of human resources, Mark Duland, in September, 1993, that he was having trouble with his shoulder. The plaintiff informed Duland of the May, 1991 fall and Duland told him to see a physician and to submit the bills to [the named defendant]. The plaintiff saw his personal physician, Job Sandoval, on September 24, 1993. Sandoval prescribed strengthening exercises for the plaintiff. In November, 1993, the plaintiff informed Duland that he was not improving and returned to Sandoval, who referred him to an orthopedic surgeon, J. A. Hallberg. On April 19, 1994, Hallberg suggested that the plaintiff undergo corrective shoulder surgery.

"The plaintiff first informed [the named defendant] that he wanted to file a workers' compensation claim for the May, 1991 fall in October, 1994. The plaintiff decided to have the corrective surgery on October 24, 1994. His last day at work prior to the surgery was October 21, 1994.

"The plaintiff filed a notice of claim, and the commissioner held a hearing on July 25, 1995. The commissioner denied his motion to preclude and determined that the plaintiff did not suffer a compensable injury. The plaintiff then appealed from the commissioner's decision to the board. The board affirmed the commissioner's decision in an opinion dated October 24, 1997." *Russell* v. *Mystic Seaport Museum, Inc.*, 52 Conn. App. 255, 257–58, 730 A.2d 66 (1999). Additional facts will be provided as necessary.

The plaintiff then appealed from the board's decision to the Appellate Court. The Appellate Court affirmed the board's decision, with one judge dissenting. We granted the plaintiff's petition for certification limited to the following two issues: (1) "Did the Appellate Court properly conclude that the plaintiff's notice of claim

was insufficient to support a motion to preclude?"; and (2) "Did the Appellate Court properly conclude that the plaintiff had failed to establish that his injury was caused by repetitive trauma/activity that arose out of and during the course of employment?" *Russell* v. *Mystic Seaport Museum, Inc.*, 248 Conn. 918, 918–19, 734 A.2d 567 (1999).

We answer the first certified question in the negative. The defendant asserts, however, as an alternative ground for affirming the judgment of the Appellate Court, that it filed a notice contesting liability pursuant to § 31-294c (b); see footnote 1 of this opinion; and that that notice was sufficient to defeat the plaintiff's motion to preclude.

We conclude that the defendant's notice contesting liability was insufficient to defeat the plaintiff's motion to preclude. Therefore, we conclude that the Appellate Court improperly affirmed the board's decision affirming the commissioner's denial of the plaintiff's motion to preclude. Having determined that the plaintiff's motion to preclude the defendant from contesting liability should have been granted, we need not consider the second certified issue.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 24–25, 682 A.2d 99 (1996); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not

yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision. *Doe* v. *Stamford,* [241 Conn. 692, 697, 699 A.2d 52 (1997)]; see *Davis* v. *Norwich,* supra, 317." (Citations omitted; internal quotation marks omitted.) *Fimiani* v. *Star Gallo Distributors, Inc.,* 248 Conn. 635, 641–42, 729 A.2d 212 (1999).

With regard to the first certified issue, there has been no prior judicial interpretation favoring the commissioner's or the board's interpretation of § 31-294c. Accordingly, our statutory analysis accords no deference to either such interpretation of § 31-294c. With regard to the defendant's alternative ground for affirmance, neither the commissioner nor the board reached the issue of whether the defendant's notice contesting liability was legally sufficient under § 31-294c (b). We also afford plenary review to this question of statutory interpretation.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Church Homes, Inc.* v. *Administrator, Unemployment Compensation Act,* 250 Conn. 297, 304, 735 A.2d 805 (1999). In another case of statutory interpretation involving consideration of whether a notice of claim was sufficient to support a motion to preclude under the act, we stated: "[W]e are mindful of the principles underlying Connecticut

practice in [workers'] compensation cases: that the legislation is remedial in nature . . . and that it should be broadly construed to accomplish its humanitarian purpose." (Citation omitted; internal quotation marks omitted.) *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 67, 607 A.2d 431 (1992).

I

We first consider whether the plaintiff's notice of claim complied with § 31-294c (a) in a manner sufficient to support a motion to preclude the defendant from contesting liability pursuant to § 31-294c (b). The Appellate Court opinion sets forth the following additional facts necessary to resolve this issue. "The plaintiff filed a notice of claim for a repetitive trauma injury occurring 'prior to [September 23, 1994].'[4] The notice was received by the [named] defendant on December 2, 1994. The notice of claim states: 'Notice is hereby given that . . . [the plaintiff], who while in the employ of Mystic Seaport Museum at Mystic prior to [September 23, 1994], sustained injuries arising out of and in the course of [his] employment as follows: "Repetitive trauma to left (non-master) shoulder while working as an engineer." ' " *Russell* v. *Mystic Seaport Museum, Inc.*, supra, 52 Conn. App. 260.

The defendant argues that, with respect to repetitive trauma injuries, the last day of exposure, which generally is the last day a claimant works, is the proper date of injury for purposes of complying with the notice of claim requirements found in § 31-294c (a). The defendant further argues that the plaintiff's notice of claim was insufficient because it failed to list the proper date of injury. Therefore, the defendant argues, the plaintiff's motion to preclude properly was denied.

The plaintiff argues that a notice of claim is sufficient to support a motion to preclude when it allows an

---

[4] The actual notice of claim listed the date of injury as "prior to 9/23/94."

employer to make a timely investigation of the claim. The plaintiff further argues that a notice of claim for a repetitive trauma injury that provides information as to the period of time over which the injury occurred is sufficient to allow an employer to investigate the claim in a timely manner. Moreover, the plaintiff argues that his notice of claim provided such information and, therefore, that it was sufficient to support a motion to preclude.

A

We begin by noting that repetitive trauma injuries are among those injuries that are specifically covered by the act. General Statutes § 31-275 (16) (A) provides: " 'Personal injury' or 'injury' includes, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, *an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment*, and occupational disease." (Emphasis added.) Thus, pursuant to § 31-275 (16) (A), there are three types of injuries that fall within the definition of "personal injury" and that are covered by the act: accidental injuries; repetitive trauma injuries; and occupational diseases. E.g., *Discuillo* v. *Stone & Webster*, 242 Conn. 570, 574–75, 698 A.2d 873 (1997).

Section 31-294c (a), which contains the notice requirements of the act, provides in relevant part: "No proceedings for compensation under the provisions of this [act] shall be maintained unless a written notice of claim for compensation is given within one year from the date of *the accident* or within three years from the first manifestation of a symptom of the *occupational disease*, as the case may be, which caused the personal injury . . . . Notice of a claim for compensation . . . shall state, *in simple language*, the *date* and place *of*

*the accident* and the nature of the injury resulting from the accident, or the *date* of the *first manifestation of a symptom of the occupational disease* and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. . . ." (Emphasis added.)

Subsection (b) of § 31-294c covers preclusion and provides in relevant part: "[A]n employer who fails to contest liability for an alleged injury or death on or before the twenty-eighth day after receiving a written notice of claim[5] and who fails to commence payment for the alleged injury or death on or before such twenty-eighth day, *shall be conclusively presumed to have accepted the compensability of the alleged injury or death.*" (Emphasis added.)

Thus, from the statutory language, we conclude that the legislature intended to: (1) include repetitive trauma injuries among those injuries compensable under the act; (2) require claimants to file notices of claim, written in simple language, in order to maintain proceedings under the act; and (3) allow claimants who have filed such notices of claim to preclude their employers from contesting liability when their employers fail to contest liability properly within twenty-eight days of receiving the notice of claim.[6]

---

[5] "Although the phrase, 'written notice of claim,' in [General Statutes (Rev. to 1987)] § 31-297 (b) [now codified as amended at § 31-294c (b)] does not specifically refer to the phrase, 'written notice of claim for compensation,' in [General Statutes (Rev. to 1987)] § 31-294 [now codified as amended at § 31-294c (a)], it is clear that both statutory sections refer to the same notice." *Pelletier* v. *Caron Pipe Jacking, Inc.*, 13 Conn. App. 276, 280, 535 A.2d 1321, cert. denied, 207 Conn. 805, 540 A.2d 373 (1988); accord *Dubois* v. *General Dynamics Corp.*, supra, 222 Conn. 66. Therefore, under the circumstances of this case, in order to support a motion to preclude, the plaintiff must have submitted a sufficient notice of claim. See *Pelletier* v. *Caron Pipe Jacking, Inc.*, supra, 280–82.

[6] For injuries occurring on or after July 1, 1993, an employer has up to one year from the date that it receives a claimant's notice of claim to file a notice contesting liability in instances in which the employer begins to

As the previously mentioned italicized portions of § 31-294c (a) indicate, however, the act is unclear with respect to what information must be included in notices of claim for repetitive trauma injuries because § 31-294c (a) specifically addresses notices of claim for accidental injuries and occupational diseases only. The act is silent as to the notice requirements for the third type of personal injury defined by § 31-275 (16) (A), namely, repetitive trauma injuries.

We turn next to the legislative histories of the notice of claim requirements contained in § 31-294c (a) and of the subsection that covers preclusion; see General Statutes § 31-294c (b); for guidance.[7] The notice of claim requirements can be traced back to our state's initial adoption of the act in 1913. The act originally specified that notices of claim "shall state in *ordinary language* the date, place, and nature of the injury, the name and address of the injured employee, and the person in whose interest compensation is claimed." (Emphasis added.) Public Acts 1913, c. 138, § 21.

Although we have found no legislative history that speaks specifically to the intent of the legislature with regard to the notice of claim requirements, we have found evidence in the legislative committee hearings[8]

---

make workers' compensation benefit payments within twenty-eight days of receiving the notice of claim. See General Statutes § 31-294c (b). Because there is no allegation that the employer in this case made a payment within that twenty-eight day period, that portion of § 31-294c (b) is not relevant to this appeal.

[7] There is nothing in the legislative history of Public Acts 1947, No. 191—the legislation that expanded the definition of personal injury to include repetitive trauma injuries—to indicate why the legislature did not also amend General Statutes (1939 Sup.) § 1330e, now codified as amended at § 31-294c (a), so as to create an explicit set of notice requirements for bringing a claim for a repetitive trauma injury.

[8] "While we generally review a statute's legislative history based on the Senate and House debates, we may also consider discussions before a joint standing committee when discerning legislative intent." *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 760 n.16, 601 A.2d 1005 (1992).

that the legislature intended the process of initiating a claim to be simple and accessible to a lay person. Talcott H. Russell testified before the judiciary and labor committees on Senate Bill 88, which ultimately was enacted as Public Acts 1913, c. 138, as chairman of a commission, the members of which were appointed by the governor, that the legislature ordered to consider the subject of workers' compensation and make recommendations. See Conn. Joint Standing Committee Hearings, Judiciary, Vol. 1, 1913 Sess., pp. 4, 8. Russell stated that the commission was recommending to the legislature a bill that would make the process of initiating claims simple and accessible to lay persons. See id., pp. 40–45. Similarly, Professor Willard C. Fisher, "an economist from Wesleyan University who had been engaged by the standing committees on judiciary and labor to assist in drafting the . . . [a]ct"; *Dowling* v. *Slotnik*, 244 Conn. 781, 804, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998); stated that "the procedure must be summary, simple, inexpensive and understandable by the people." Conn. Joint Standing Committee Hearings, supra, p. 239. Likewise, Charles Gay, an employer of labor, stated that the act should be written such that "claims made by [workers] could be fully heard, without the necessity of lawyers, and free from legal technicalities and quibbles . . . ." Id., p. 302.

In 1921, the legislature amended General Statutes (1918 Rev.) § 5360, which codified the notice of claim provision of the act. The amended provision provided: "Such notice shall state in *simple language* the date, place and nature of the injury, the name and address of the injured employee and the person in whose interest compensation is claimed. . . ." (Emphasis added.) Public Acts 1921, c. 306, § 8. The legislative history of Public Acts 1921, c. 306, is silent with respect to why the legislature amended the statute to provide that

notices of claim shall be stated in "simple" rather than "ordinary" language.[9]

We conclude that both the legislative history and the statutory language providing that notices of claim shall be stated in "simple language"; General Statutes § 31-294c (a); indicate that we should interpret the act's notice of claim requirements for repetitive trauma injuries in a manner consistent with the legislature's intent to keep the process of initiating a claim simple and accessible to lay persons. See *Collins* v. *West Haven,* 210 Conn. 423, 431, 555 A.2d 981 (1989) ("the statute, by providing that a claimant should state the nature of his injury in 'simple language,' suggests that the legislature intended the average lay person to be able to give notice of his [or her] claim").

The legislative history of the subsection covering preclusion, currently found in § 31-294c (b), was reviewed extensively in *Menzies* v. *Fisher,* 165 Conn. 338, 334 A.2d 452 (1973). In *Menzies,* we concluded: "The statutory changes . . . of concern . . . were in one small section of a rather substantial piece of legislation, Public Acts 1967, No. 842. By this act the legislature sought to correct some of the glaring inequities and inadequacies of the . . . [a]ct. Among the defects in previous provisions of the act were the needless, prejudicial delays in the proceedings before the commissioners, delays by employers or insurers in the payment of bene-

---

[9] The notice of claim requirements contained in the statute applicable to this appeal are similar to those contained in General Statutes (1918 Rev.) § 5360, as amended by Public Acts 1921, c. 306, § 8, with the exception that the current statute establishes the requirements for notices of claim for occupational diseases as well as accidents. Section 31-294c (a) provides in relevant part that "[notices of claim] shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. . . ."

fits, lack of knowledge on the part of employees that they were entitled to benefits and the general inequality of resources available to claimants with bona fide claims. See 12 H.R. Proc., Pt. 9, 1967 Sess., pp. 4035–37. When the amendment was proposed for passage, the member of the committee presenting the bill (1967 Sess., H.B. 2161) stated: 'The present law requires employers to give notice of intention to contest within 20 days after notice of injury. The commissioners are not in agreement as to what the results are when the employer fails to give the required notice, or where the notice involved does not comply with the law. Some hold, in effect, that there is no penalty, while others hold there is no right to contest liability, but the extent of injury may still be contested. This section clears up the situation. It provides that within 20 days after written notice of claim is made, the employer must file a statement of intention to contest and the basis upon which he will contest. If he fails to file this notice within the time stated or the notice is defective, the employer cannot thereafter contest either liability or extent of liability. This will mean that employers will now have to investigate claims promptly and act quickly; it also means that employees will be able to learn early in the proceedings what the defects are, if any, in their claims.' [Id.], p. 4036." *Menzies* v. *Fisher*, supra, 342–43.

We also described the legislative purpose of the amendment to the act dealing with preclusion. "The object which the legislature sought to accomplish is plain. [General Statutes (Rev. to 1972) §] 31-297 (b) [now codified as amended at § 31-294c (b)] was amended to ensure (1) that employers would bear the burden of investigating a claim promptly and (2) that employees would be timely apprised of the specific reasons for the denial of their claim. These effects would, in turn, diminish delays in the proceedings, discourage arbitrary refusal of bona fide claims and narrow the legal issues

which were to be contested. To narrow the scope of the controversy would lighten the burden on the claimant in terms of legal expenses, a result which the legislature plainly desired to accomplish by its 1967 amendments. See 12 H.R. Proc., [supra], pp. 4037–38 . . . ." (Citation omitted.) *Menzies* v. *Fisher*, supra, 165 Conn. 343–44.

Subsequently, in *Dubois* v. *General Dynamics Corp.*, supra, 222 Conn. 67, we considered the same general question that we address in this appeal, namely, whether a plaintiff's notice of claim complied with the act's notice of claim requirements in a manner sufficient to support a motion to preclude. Relying upon the plain language and the policy behind the provision covering preclusion, and the plain language of the provision incorporating the notice of claim requirements, we concluded that, because the plaintiff had filed a notice of claim that had "substantially complied"; id., 67; with the notice of claim requirements, the commissioner had jurisdiction to grant the plaintiff's motion to preclude. Id. We reaffirmed this principle in dicta in *Pereira* v. *State*, 228 Conn. 535, 637 A.2d 392 (1994), in which we adopted the following standard: "[I]f the notice of claim is sufficient to allow the employer to make a timely investigation of the claim, it triggers the employer's obligation to file a disclaimer." Id., 542–43 n.8.

B

Having ascertained the general standard for testing the sufficiency of notices of claim, we turn to the question of the time related information that must be specified in a notice of claim for a repetitive trauma injury for the notice to be "sufficient to allow the employer to make a timely investigation of the claim . . . ." Id. We begin by noting again that repetitive trauma injuries are defined by the act as injuries that are the "direct result of repetitive trauma or repetitive acts incident to . . . employment . . . ." General Statutes § 31-275

(16) (A). In contrast, accidental injuries are those injuries that "may be definitely located as to the time when and the place where the accident occurred . . . ." General Statutes § 31-275 (16) (A). Therefore, as both the board and our courts have recognized, "the process of injury from a repetitive trauma is ongoing until [the last date of exposure]"; *Discuillo* v. *Stone & Webster*, supra, 242 Conn. 581 n.11; and, "in many cases involving repetitive trauma, the very nature of the injury will make it impossible to demarcate a specific date of injury." Id.; see also *Chase* v. *State*, 45 Conn. App. 499, 506, 696 A.2d 1299 (1997) ("[a] repetitive trauma, by definition, necessarily occurs over a period of time"); *Quinn* v. *Standard Knapp*, 12 Conn. Workers' Comp. Rev. Op. 334, 337 (1994), appeal dismissed, 40 Conn. App. 446, 671 A.2d 1333 (1996) (same); *Grady* v. *G & L Oxygen & Medical Co.*, 6 Conn. Workers' Comp. Rev. Op. 12, 13 (1988) (same).

Thus, we must determine what time related information in a notice of claim is sufficient to allow an employer to make a timely investigation of an injury that "cannot be definitely located as to . . . time and . . . place." (Internal quotation marks omitted.) *Grady* v. *G & L Oxygen & Medical Co.*, supra, 6 Conn. Workers' Comp. Rev. Op. 13. The Appellate Court considered this very issue in *Chase* v. *State*, supra, 45 Conn. App. 499. In *Chase*, the plaintiff had filed a notice of claim stating that he had suffered a repetitive trauma injury to his knee and back "on or before July 19, 1989." Id., 505–506. The Appellate Court concluded: "The defendant was thus on notice that on or before that date the plaintiff sustained one or both types of injuries.

"The notice of claim was sufficient to allow the defendant to investigate the claim of repetitive [trauma] injury in a timely manner. . . . The review board has consistently held that where a notice of claim alleges a repetitive trauma [injury], the lack of a precise date

of injury is not fatal to a notice of claim." (Citation omitted.) Id., 506, citing *Quinn* v. *Standard Knapp*, supra, 12 Conn. Workers' Comp. Rev. Op. 336.

Similarly, in *Grady* v. *G & L Oxygen & Medical Co.*, supra, 6 Conn. Workers' Comp. Rev. Op. 12, the compensation review division considered a notice of claim for a repetitive trauma injury, in which the plaintiff alleged that he had been injured "at various times and places prior to December 19, 1984 . . . ." (Internal quotation marks omitted.) Id., 13. The compensation review division concluded: "Repetitive trauma injuries by their very nature as recognized in the statutory definition cannot be definitely located as to . . . time and . . . place. Were we then to construe [the act's notice of claim requirements] as requiring claimants to give specific dates and places of accidents in their notices of claims for repetitive trauma injuries it would effectively negate legislative intent as expressed in [General Statutes (Rev. to 1987) §] 31-275 (8) [now codified as amended at § 31-275 (16) (A)]. Under such a construction, no claimant could ever perfect a repetitive trauma claim. . . . We therefore find no defect in the [claimant's] notice of claim." (Citations omitted; internal quotation marks omitted.) *Grady* v. *G & L Oxygen & Medical Co.*, supra, 13.

We find the reasoning of *Chase* and *Grady* to be persuasive. A claimant who alleges a repetitive trauma injury is claiming that he or she has been subjected to more than one trauma at more than one moment in time. See General Statutes § 31-275 (16) (A). Consequently, an employer who is investigating a claim for a repetitive trauma injury must necessarily focus its investigation, not upon any one specific date, but, rather, upon a period of time. See *Quinn* v. *Standard Knapp*, supra, 12 Conn. Workers' Comp. Rev. Op. 337. Therefore, we conclude that a notice of claim for a repetitive trauma injury that provides adequate information as to the

period of time over which the injury is alleged to have occurred "is sufficient to allow the employer to make a timely investigation of the claim"; *Pereira* v. *State,* supra, 228 Conn. 542–43 n.8; and is sufficient, in the absence of other defects, to support a motion to preclude.

## C

Turning now to this case, we must determine whether the plaintiff's notice of claim for a repetitive trauma injury, which stated that the injury occurred "prior to 9/23/94"; see footnote 4 of this opinion and accompanying text; provided adequate information as to the period of time over which the injury occurred, thereby complying with § 31-294c. By being informed that the injury had occurred "prior to 9/23/94," the defendant was on notice that, before that date, the plaintiff had suffered a repetitive trauma injury. Consequently, the defendant was given sufficient notice so as to have focused its investigation on the period of time preceding the date the plaintiff specified in his notice of claim. See *Chase* v. *State,* supra, 45 Conn. App. 506–507; see also *Quinn* v. *Standard Knapp,* supra, 12 Conn. Workers' Comp. Rev. Op. 337. Such a notice sufficiently informs an employer of those injuries that allegedly have occurred up until the latest date reported in the notice of claim, in this case, September 23, 1994. Accordingly, we conclude that the plaintiff's notice of claim was "sufficient to allow the employer to make a timely investigation of the claim"; *Pereira* v. *State,* supra, 228 Conn. 542–43 n.8; and, therefore, was sufficient to support a motion to preclude.

## D

In reaching this conclusion, we reject the defendant's argument, which was accepted by the Appellate Court, that the only legally sufficient date of injury in a *notice of claim* for a repetitive trauma injury is the last day

of exposure to the trauma. *Russell* v. *Mystic Seaport Museum, Inc.*, supra, 52 Conn. App. 261–62. In rejecting this argument, we distinguish cases such as *Discuillo* v. *Stone & Webster*, supra, 242 Conn. 581, *Crochiere* v. *Board of Education*, 227 Conn. 333, 354, 630 A.2d 1027 (1993), and *Borent* v. *State*, 33 Conn. App. 495, 499, 636 A.2d 392 (1994), all of which stand for the proposition that, for certain types of repetitive trauma injuries, the *statute of limitations* runs from the date of last exposure. We distinguish those cases because the purpose of a date of injury in a *notice of claim* is distinct from the purpose of a date of injury with regard to a *statute of limitations*.

As we stated previously, the purpose of requiring a date of injury in a *notice of claim* is to "allow the employer to make a timely investigation of the claim . . . ." *Pereira* v. *State*, supra, 228 Conn. 542–43 n.8. In contrast, the purpose of a date of injury with regard to a *statute of limitations* is to determine "when that [limitation] period begins to run." *Discuillo* v. *Stone & Webster*, supra, 242 Conn. 575. Therefore, for repetitive trauma injuries, which often do not have a specific date of injury; see id., 581 n.11; "out of necessity, some other clear threshold [must] be established as the start of the applicable limitation period." Id.

Thus, the rule that the statute of limitations period begins to run from the date of last exposure for some repetitive trauma injuries has no relevance, and bears no logical relationship, to the rule requiring sufficient time related information in a notice of claim to allow an employer to investigate a repetitive trauma injury. Consequently, our determination of when the statute of limitations begins to run for certain types of repetitive trauma injuries is irrelevant to a determination of whether the plaintiff's notice of claim complied with § 31-294c (a). Furthermore, there is nothing in *Discuillo, Crochiere* or *Borent* suggesting that the date of

injury analysis we applied in the statute of limitations context at issue in those cases, also is applicable to a determination of whether a notice of claim is sufficient to support a motion to preclude.

On the contrary, in *Discuillo*, we acknowledged that our determination that the date of injury in repetitive trauma cases is the last date of exposure was simply for purposes of determining when the *statute of limitations* begins to run. See id. ("We have adopted this general rule out of recognition that, in many cases involving repetitive trauma, the very nature of the injury will make it impossible to demarcate a specific date of injury. . . . The last day of exposure to the relevant trauma is a logical choice, as *the process of injury from a repetitive trauma is ongoing until that point*." [Emphasis added.]). Our statement in *Discuillo* that "the process of injury from a repetitive trauma is ongoing"; id.; is consistent with our conclusion in part I C of this opinion that a date specified in a notice of claim for a repetitive trauma injury that is prior to the last date of exposure is sufficient to provide notice to an employer of those injuries that allegedly have occurred up until the latest date stated in such a notice of claim.

Our reasoning employed in part I C of this opinion also is supported by *Borent* v. *State*, supra, 33 Conn. App. 495, a case with material facts relating to the plaintiff's date of injury that are nearly identical to those in this case. In *Borent*, the plaintiff filed a notice of claim on October 13, 1988, alleging a repetitive trauma injury with a date of injury of August 2, 1988. Id., 497. In *Borent*, the Appellate Court found that the plaintiff continued to work for the defendant beyond August 2, 1988, and was employed by the defendant on October 13, 1988. See id., 500 & n.5. Furthermore, the Appellate Court did not conclude that the plaintiff's duties changed after August 2, 1988. Therefore, in *Borent*, the plaintiff provided "a date of injury [in his notice of

claim] in a repetitive trauma case different from the last day of exposure . . . ." *Russell* v. *Mystic Seaport Museum, Inc.*, supra, 52 Conn. App. 263; see *Borent* v. *State*, supra, 497. Although the Appellate Court determined that, for purposes of the *statute of limitations*, the last date of exposure was the relevant date of injury; *Borent* v. *State*, supra, 499; it nonetheless concluded that the plaintiff's *notice of claim*, which alleged a date of injury different from the last date of exposure, *was sufficient to support a motion to preclude.* Id., 500.

Therefore, in this case, even if it is assumed, arguendo,[10] that the plaintiff specified a date of injury in his notice of claim "different from the last day of exposure"; *Russell* v. *Mystic Seaport Museum, Inc.*, supra, 52 Conn. App. 263; it was improper for the Appellate Court to have concluded that, "[a]s a matter of law, October 21, 1994 [the plaintiff's last day at work before shoulder surgery], was the date of the plaintiff's injury"; id., 262; for purposes of the notice of claim requirements of § 31-294c (a).

II

Having determined that the plaintiff's notice of claim was sufficient to support a motion to preclude, we next

[10] We agree with the Judge Dupont's dissent in the Appellate Court, in which she concluded: "Although October 21, 1994, was the last day the plaintiff worked, it is not known whether September 23, 1994, was the last time the plaintiff was exposed to a repetitive trauma at work. The plaintiff may not have been assigned to his usual duties between September 23 and October 21, making it possible that the last day worked was not the last day he was exposed to the trauma. The last date of exposure might also have been sometime in August, 1994, which was when the commissioner found that the plaintiff's last full dislocation at work occurred." (Internal quotation marks omitted.) *Russell* v. *Mystic Seaport Museum, Inc.*, supra, 52 Conn. App. 272–73 n.3 (*Dupont, J.*, dissenting). Therefore, in light of the fact that there has been "no finding as to the last date of exposure to the repetitive trauma"; id., 272 n.3; we assume, arguendo, that the plaintiff's notice of claim specified a date of injury distinct from the last day of exposure.

consider the defendant's claim that the judgment of the Appellate Court should be affirmed on the alternative ground that the defendant filed a notice contesting liability that complied with the requirements of § 31-294c (b) in a manner sufficient to defeat the plaintiff's motion to preclude. We disagree with this contention of the defendant.

The following additional facts are necessary to resolve this issue. The defendant filed three notices to contest liability in this case. The defendant's first disclaimer was filed on August 29, 1994, and stated: "CURRENT TREATMENT AND RECOMMENDED SURGERY IS [sic] NOT A RESULT OF THE [May 2, 1991] INJURY. CARRIER DENIES RESPONSIBILITY." This disclaimer described the injury as a "BRUISED LEFT SHOULDER."

The defendant's second disclaimer was filed on November 14, 1994, and stated: "No accident personal injury or occupational disease arising out of and occurring in the course of employment. No written notice received per section 31-294. Statute of Non-Claim would apply." This disclaimer listed the date of injury as May 2, 1991, and also described the injury as a "BRUISED LEFT SHOULDER."

The defendant's third disclaimer was filed on December 8, 1994, and stated: "No accident personal injury or occupational disease arising out of and occurring in the course of employment. No contamination by toxic gas, heart disease or ulcer arising out of and occurring in the course of [employment] as alleged on Form 30C[11] received [December 6, 1994]." This disclaimer listed the date of injury as May 2, 1991, and, like the first two

[11] A form 30C is the name of the form prescribed by the workers' compensation commission of Connecticut for use in filing a notice of claim under the act.

disclaimers, described the injury as a "BRUISED LEFT SHOULDER."

The defendant argues that either the three disclaimers, when viewed together, or the third disclaimer, which specifically addressed the plaintiff's notice of claim, was sufficient to deny the motion to preclude. The plaintiff argues that "none of the disclaimers filed by the defendant . . . informed the plaintiff that his repetitive trauma claim was being denied or the reasons therefor." Therefore, the plaintiff contends, the defendant's disclaimers were insufficient to defeat a motion to preclude. We agree with the plaintiff.

A

We begin our analysis with the relevant statutory language. Section 31-294c (b) requires that, "[w]henever liability to pay compensation is contested by the employer, he shall file with the commissioner . . . a notice . . . stating that the right to compensation is contested, the name of the claimant, the name of the employer, *the date of the alleged injury* or death and the *specific grounds on which the right to compensation is contested.*" (Emphasis added.) Based on this statutory language, we conclude that a notice to contest liability must state, inter alia, both (1) the date of the alleged injury, and (2) the specific reasons for contesting compensation.

"In *Menzies* [v. *Fisher*, supra, 165 Conn. 338], we determined the scope and operation of the 1967 amendments to § 31-297 (b) [now codified as amended at § 31-294c (b)]; Public Acts 1967, No. 842, § 7; which specified that the employer's failure to file a notice of intention to contest compensability results in a conclusive presumption of the acceptance of liability. *Menzies* v. *Fisher*, supra, 341. In light of the public act's legislative history, we concluded that [the statute] was amended to ensure (1) that employers would bear the burden of

investigating a claim promptly and (2) that employees would be timely apprised of the specific reasons for the denial of their claim. Id., 343. We also stated, however, that the notice need not be expressed with the technical precision of a pleading, but need only reveal the specific grounds on which compensability is contested. Id., 347–48. A disclaimer is sufficient, therefore, if it reveals to the plaintiff specific substantive grounds on which compensability will be contested." (Internal quotation marks omitted.) *Pereira* v. *State*, supra, 228 Conn. 541.

## B

In this case, the defendant's disclaimers failed to satisfy the statutory requirements of § 31-294c (b) for two reasons. First, we agree with Judge Dupont's statement in her dissent in the Appellate Court that, "despite the plaintiff's claim for compensation for a repetitive trauma [injury], the defendant has consistently treated the plaintiff's notice of claim as one for an accidental injury occurring on a specific date . . . ." *Russell* v. *Mystic Seaport Museum, Inc.*, supra, 52 Conn. App. 271–72 (*Dupont, J.*, dissenting).[12] The injury that the plaintiff had alleged in his notice of claim was a repetitive trauma injury with a date of injury "prior to 9/23/94." See footnote 4 of this opinion. In contrast, all of the defendant's disclaimers listed the date of injury as May 2, 1991. Therefore, none of the three disclaimers filed by the defendant sufficiently listed "the date of the alleged injury." General Statutes § 31-294c (b).

The defendant's disclaimers also were insufficient to defeat a motion to preclude for a second reason, namely, that none of the disclaimers provided the plaintiff with the "specific substantive grounds on which compensability [would] be contested." *Pereira* v. *State*, supra, 228 Conn. 541. Although the first disclaimer pro-

---

[12] The Appellate Court majority did not reach this issue.

vided a reason for disclaiming an accidental injury occurring on May 2, 1991, it did not inform the plaintiff as to why his repetitive trauma injury was being contested. The second disclaimer contested liability for an "accident personal injury or occupational disease." Thus, as with the first disclaimer, this notice failed to state that the defendant was contesting the plaintiff's *repetitive trauma* injury claim.

Finally, the third disclaimer, which was filed within twenty-eight days of the date that the defendant had received the plaintiff's notice of claim, stated: "No accident personal injury or occupational disease arising out of and occurring in the course of employment. No contamination by toxic gas, heart disease or ulcer arising out of and occurring in the course of [employment] as alleged on Form 30C received [December 6, 1994]." The first sentence of the defendant's third disclaimer again failed to state that the defendant was contesting the *repetitive trauma* injury alleged by the plaintiff. With regard to the second sentence, even if it is assumed, arguendo, that this sentence referred to the plaintiff's alleged repetitive trauma injury by contesting liability for the injury "alleged on Form 30C," and even if it is assumed that this provided specific substantive reasons for rejecting the plaintiff's claim by stating that there was "[n]o contamination by toxic gas, heart disease or ulcer arising out of and occurring in the course of [employment]," these specific substantive reasons were not responsive to the injury the plaintiff alleged in his notice of claim. The plaintiff never alleged any injury resulting from toxic gas, heart disease or ulcers. Therefore, the second sentence failed to bring the notice into compliance with § 31-294c (b) because it did not inform the plaintiff as to the "specific substantive grounds on which compensability will be contested." Id.

Thus, we conclude that, because none of the defendant's disclaimers sufficiently lists "the date of the

alleged injury"; General Statutes § 31-294c (b); or provides "specific substantive grounds on which compensability will be contested"; *Pereira* v. *State,* supra, 228 Conn. 541; the defendant's disclaimers did not comply with the requirements of § 31-294c (b). Accordingly, we conclude that the defendant did not file a disclaimer that was sufficient to defeat the plaintiff's motion to preclude the defendant from contesting liability.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the board, with further direction that the case be remanded to the commissioner with direction to grant the plaintiff's motion to preclude and to hold a new hearing limited to the issue of the amount of compensation to which the plaintiff is entitled.

In this opinion the other justices concurred.